UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARTINO SILVA, individually,<br><br>Plaintiff,<br><br>v.<br><br>ALLPAK CONTAINER, LLC, a Washington Corporation,<br><br>Defendant. | Case No. C16-603 RSM<br><br>ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL |

## I.     INTRODUCTION

This matter comes before the Court on Defendant Allpak Container, LLC ("Allpak")'s two Motions to Compel, Dkts. #38 and #39.  Allpak moves the Court to compel compliance with a Subpoena Duces Tecum issued to a business co-owned by Plaintiff Martino Silva and to compel certain discovery responses from Plaintiff.  For the reasons set forth below, the Court DENIES both of these Motions.

## II.     BACKGROUND

A full background of this case is not necessary for the purposes of this motion.

Plaintiff Martino Silva began his employment with Defendant Allpak in March 2012. Dkt. #1-1 at 2; Dkt. #3 at 2.  Mr. Silva alleges he held a full time position as an Industrial Maintenance Technician with earnable vacation and sick time.  Dkt. #1-1 at 2.

ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL - 1

On July 26, 2015, Mr. Silva's wife gave birth to their child via cesarean section. *Id*. at 3. Following the birth, Mr. Silva used vacation and sick time for two weeks of paid leave. *Id*.; Dkt. #3 at 3. Allpak admits that Mr. Silva's two-week request for time off did not mention FMLA leave and that the leave was not designated as FMLA leave at that time. Dkt. #3 at 3. On August 7, 2015, at the end of these two weeks, Mr. Silva used FMLA forms to request additional leave to care for his wife through her recovery from the C-section. Dkts. #22-1 at 2-8; #24-3. Mr. Silva originally estimated needing to take leave through September 7, 2015. *See* Dkt. #22-1 at 4; Dkt. #3 at 3-4. That same day, Allpak approved Mr. Silva's FMLA leave request. Dkt. #24-3 at 2. The Court notes that twelve weeks measured from August 7, 2015, would end on October 30, 2015. On or about September 10, 2015, Mr. Silva requested to extend his FMLA leave through October 26, 2015, and this leave request was approved by Allpak. *See* Dkt. #22-1 at 4; Dkt. #3 at 4 ("Defendant further admits that it approved Plaintiff's request for additional leave.").

Mr. Silva coordinated with his supervisor to return to work on October 26, 2015. *See* Dkt. #3 at 4. Mr. Silva's employment was terminated the day he arrived back at work, allegedly as part of a company-wide reorganization. *See* Dkt. #12-2 at 3-4. Specifically, Allpak has stated in response to interrogatory that a company-wide reorganization was initiated in August 2015 "to increase Defendant's profitability," resulting in "multiple layoffs and the elimination of all temporary labor from facility." *Id*. at 4. According to Allpak:

> As part of the layoffs, the company eliminated the supervisory position of a 25 year employee in the Production Department. Because that employee had a significant number of years with the company, knew how to operate every piece of equipment in the Production Department, and had a broad range of knowledge regarding the company's operations, Mr. Keizer and Bob Wescott, Maintenance Manager, made the decision to transfer the employee to the Maintenance Department after consulting with the other

ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL - 2

> Maintenance Technicians in that department. Plaintiff was selected for layoff from the Maintenance Department because he had the shortest tenure with the company among the Maintenance Technicians in that Department, the least amount of experience, and, unlike the other Maintenance Technicians who were journeymen or millwrights, Plaintiff was still an apprentice. Plaintiff also had a prior history of performance issues regarding failing to follow the company's attendance policy.

*Id.* Allpak has not subsequently offered to reinstate Mr. Silva. Dkt. #1-1 at 4.

Plaintiff filed this action in King County Superior Court on March 30, 2016. Dkt. #1-1. Defendant removed to this Court on April 26, 2016. Dkt. #1.

Allpak has learned through discussions between counsel that Mr. Silva has apparently performed work for a business co-owned by Plaintiff, Tange Fit d/b/a Curves ("Tange Fit"). Dkt. #40 at 4. According to these discussions, this work did not begin until March 2016, Mr. Silva did not receive any compensation for his work, and did not consider himself an employee of his own business. *Id.* Tax records for Tange Fit were produced in discovery.

On October 24, 2016, Plaintiff served his Second Interrogatories and Request for Production on Allpak seeking, in part, "all emails, memos, and other written documents referencing or related to the injury and L&I claim made by Plaintiff Martino Silva as a result of an incident and injury on July 9, 2013." *Id.* at 115-17. In response to that discovery request, Allpak requested Mr. Silva sign a release form allowing Allpak access to all files maintained with the Washington State Department of Labor & Industries. *Id.* at 120-21. Mr. Silva refused to sign that release or produce such records when explicitly requested in later discovery by Allpak. *See* Dkt. #39 at 4-5.

On October 26, 2016, Allpak served a Subpoena Duces Tecum ("subpoena") on Tange Fit, seeking documents related to Plaintiff's employment with or ownership of Tange Fit, as well as the identity of any employees of Tange Fit:

ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL - 3

- All records related to any work performed by Plaintiff Martino Silva since January 1, 2015 to the present, including but not limited to any payroll records, time sheets, performance reviews by or about Plaintiff, photographs, videos, customer comments or complaints, contracts signed by Plaintiff on behalf of the company, e-email communications or other written or oral communications, or any other records related to Martino Silva;

- Any and all documents related to the ownership or management of Tange Fit, Inc. d/b/a Curves that name or reference Martino Silva; and

- Documents sufficient to identify all employees and/or contractors from January 1, 2015 to the present, including current home address and telephone numbers.

Dkt. # 40 at 91-98. Tange Fit objected to this subpoena as overly broad and seeking information not relevant to this case. *Id.* at 102. Subsequent attempts to resolve this discovery dispute were unsuccessful. Tange Fit eventually produced a photo showing "Plaintiff apparently staffing the booth on behalf of Tange Fit at a wellness fair in September 2015." Dkt. #38 at 5. This photo indicates it was taken on a Saturday. Dkt. #40 at 113.

On December 22, 2016, Allpak served Defendant's Second Interrogatories and Requests for Production on Plaintiff, seeking the following documents related to Tange Fit:

> INTERROGATORY NO. 13: Describe in detail your relationship with Tange Fit, Inc. d/b/a Curves ("Curves"), including but not limited to your status as an owner, manager, employee, and/or otherwise. Include sufficient information to allow Defendant to ascertain the extent of your relationship, such as percentage of ownership, job titles held, supervisor(s), work performed, involvement in hiring and/or firing staff members, hours worked per week, and the date of onset and date of any changes to your relationship with Curves.
>
> REQUEST FOR PRODUCTION NO. 27: To the extent not already produced, produce any and all documents and/or tangible items in your possession, custody, or control related to the ownership or management of Curves.

ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL - 4

>REQUEST FOR PRODUCTION NO. 28: Produce all documents and/or tangible items in your possession, custody, or control related to any work you have performed from January 1, 2014 to the present for any company or employer other than Defendant. This includes but is not limited to any payroll records, time sheets, performance reviews, photographs, videos, customer comments or complaints, contracts (including but not limited to contracts signed by you on behalf of any company or employer), email communications, other written or oral communications, or any other records.
>
>INTERROGATORY NO. 14: Identify all employees and/or contractors hired or retained by Curves from January 1, 2014 to the present, including full name, home address, home telephone number, job title, supervisor(s), and dates of employment or engagement.

*Id.* at 106-11. Plaintiff objected to these discovery requests and subsequent attempts to resolve this discovery dispute were unsuccessful.

### III.   DISCUSSION

#### A. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The party that resists discovery has the burden to

ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL - 5

show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

### B. Tange Fit Discovery Requests

The Court will begin by addressing the relevancy of Defendants various inquiries into Mr. Silva's relationship with Tange Fit. Allpak argues that "[e]mployment records are routinely subject to discovery in employment cases." Dkt. #38 at 6 (citing *Ragge v. MCA/Univ. Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995); *Barsamian v. City of Kingsburg*, 2008 U.S. Dist. LEXIS 44777, *8 (E.D. Cal. 2008)). Allpak argues that "[t]he nature of Plaintiff's work at Tange Fit and his role and status as an owner are relevant to Plaintiff's alleged economic damages and his failure to mitigate those damages." *Id.* at 7. Allpak argues that this information is relevant to its after-acquired evidence defense "because FMLA fraud by Plaintiff would be grounds for termination." *Id.* at 8. Allpak argues that it "has one document showing that Plaintiff was working for Tange Fit during his FMLA leave period, when he was supposed to be taking **protected** time off from work to care for his wife," Dkt. #37 at 8 (emphasis in original). Allpak argues that its discovery requests were narrowly tailored.

In Response, Mr. Silva argues that, under FMLA regulations, "Defendant AllPak Container may continue to enforce policies and provisions regarding outside employment but cannot deny FMLA benefits due to outside employment." Dkt. #44 at 6 (citing CFR 825.216(e)).[1] Mr. Silva argues that Allpak has a policy regarding outside employment, which does not prohibit such but merely discourages it. Specifically, the policy states that outside employment must "in no way detract from the efficiency of the employee while performing

---

[1] The Court acknowledges Allpak's argument that Mr. Silva cannot file a Response brief to Allpak's Motion to Compel directed at Tange Fit, a non-party. *See* Dkt. #51 at 1 n.1. However, because Allpak has also filed a Motion to Compel directed at Mr. Silva for similar records related to Tange Fit, the Court sees no issue considering Mr. Silva's arguments in Response to that Motion in deciding both Motions.

ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL - 6

Company duties," present no conflict of interest, take no preference over extra duty required by Allpak, or use Allpak resources. *Id.* (citing Dkt. #45 at 42). Mr. Silva argues that Allpak has failed to allege that Mr. Silva violated this policy. Mr. Silva argues that Allpak was aware of his gym ownership during his employment and "was never subjected to termination." *Id.* at 7. Mr. Silva argues that the requested information is not relevant because regardless of whether he engaged in any ownership duties, "this would not play a role in determining whether Defendant had a legitimate business purpose for terminating Plaintiff's employment the day he returned from FMLA leave." *Id.* Mr. Silva argues that it has already produced sufficient records to establish damages by submitting redacted tax returns.

On Reply, Allpak argues that "Tange Fit makes no attempt to address this well-settled law holding that a plaintiff's subsequent employment records are discoverable and directly relevant to a plaintiff's current and future earning potential, as well as to whether a plaintiff has failed to mitigate his damages." Dkt. #51 at 2. Allpak argues that it is entitled to the requested documents to support its after-acquired evidence affirmative defense. *Id.* at 3. Allpak argues that, despite its company policy permitting employees to engage in outside employment under certain conditions, "Allpak is entitled to discover whether Plaintiff lied about the purpose of his leave in the first place." *Id.* at 4. Allpak argues that "[t]aking leave to provide care to a close family member is a qualifying reason under the FMLA; taking leave to manage a business is not." *Id.*

The Court agrees with Mr. Silva that these discovery requests seek information not relevant to this litigation. The Court finds itself again disagreeing with Allpak's view of what is relevant to this case. *See* Dkt. #27. Allpak admits it granted *all* of Mr. Silva's FMLA requests. Allpak admits that Mr. Silva was eligible for FMLA. Allpak has stated on the record that it

ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL - 7

terminated Mr. Silva because of company-wide layoffs, and because of Mr. Silva's attendance, not because Mr. Silva lied on his FMLA forms. Based on the existing record, the Court cannot see how the requested records from Tange Fit and from the Plaintiff related to his work for Tange Fit could be relevant. Allpak's claim that the requested records are relevant to determining "plaintiff's current and future earning potential, as well as to whether a plaintiff has failed to mitigate his damages" does not match its actual discovery requests. For example, Allpak is requesting from Tange Fit "all records related to any work performed by Plaintiff Martino Silva," including "customer comments or complaints, contracts signed by Plaintiff on behalf of the company, e-mail communications… or any other records related to Martino Silva." This request does not address Plaintiff's earnings, and is absurdly broad and disproportional to the needs of this case. Allpak's request for all employee and contractor names, home addresses, and telephone numbers for Tange Fit would not help in determining Mr. Silva's earning potential or failure to mitigate damages either. Allpak need not conduct an investigation into the operations of Tange Fit to defend against Mr. Silva's FMLA claims.

Rather, Allpak seems intent on obtaining these records as a way to attack the legitimacy of Mr. Silva's FMLA request. As previously stated by the Court, Allpak's after-acquired evidence affirmative defense does not justify a fishing expedition. *See Rivera, supra; Lewin v. Nackard Bottling Co.*, 2010 U.S. Dist. LEXIS 123738, *4, 2010 WL 4607402 (D. Ariz. Nov. 4, 2010) ("…though the after-acquired evidence doctrine provides employers a mechanism to limit an employee's remedies based on evidence found during discovery, it should not be used as an independent basis to initiate discovery"); *see also Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1412 (9th Cir. 1996) ("The Supreme Court [has] held that the use of after-acquired evidence of wrongdoing by an employee that would have resulted in their termination as a bar

ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL - 8

to all relief for an employer's earlier act of discrimination is inconsistent with the purpose of the ADEA").  Even if the Court permitted Allpak to seek this discovery to support the affirmative defense, it is unclear that this discovery would be relevant to that defense.  The Court disagrees with Allpak's conclusion that it has a document "showing that Plaintiff was working for Tange Fit during his FMLA leave period, when he was supposed to be taking **protected** time off from work to care for his wife." Dkt. #37 at 8 (emphasis in original).  At worst, the photo in question shows Mr. Silva manning a desk at a health fair on a Saturday for his co-owned business, not engaging in work that would prevent him from caring for his wife.  The Court seriously doubts this "would constitute legitimate grounds for Plaintiff's termination from Allpak" given the policy for outside employment cited by Plaintiff.  Allpak is left with no valid response to Mr. Silva's objections to this discovery.  Given all of the above, the Court will deny Allpak's Motions as related to the above information.

**C. Plaintiff's Workers' Compensation Records**

Allpak argues that Plaintiff's L&I records are "relevant to his compensation and benefits history, vocational rehabilitation options, and overall employment with Allpak," and that "[e]mployment records are routinely subject to discovery in employment cases." Dkt. #39 at 5-6 (citing *Ragge, supra* and *Barsamian, supra*).  Allpak argues that Mr. Silva "admits the relevance of these records to this litigation because he previously sought the same information from Allpak." *Id*. at 6.

In Response, Mr. Silva points out that his discovery request was for internal company documents to determine whether Plaintiff's prior L&I leave was a motivating factor for his termination, but Allpak's request for all L&I records would involve different documents, including Plaintiff's medical records.  Dkt. #42 at 2.  Plaintiff argues that his L&I file contains

ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL - 9

confidential information under RCW 51.28.070. *Id*. at 4. Plaintiff argues that his medical history is not at issue in this case.

On Reply, Allpak argues that "[t]here is no legitimate dispute that these records are highly relevant to both Plaintiff's claims and Allpak's defenses, as demonstrated by the fact that Plaintiff sought the exact same information from Allpak…" Dkt. #40 at 2-3. Allpak argues that Plaintiff's L&I file is relevant as to "Plaintiff's claimed damages, his duty to mitigate those damages, his ability to work, and his credibility." *Id.* at 3. Allpak argues that RCW 51.28.070 does not support Plaintiff's position, citing *Mebust v. Mayco Mfg. Co.*, 8 Wn. App. 359, 360–61, 506 P.2d 326 (1973) and *Papadopoulos v. Fred Meyer Stores, Inc.*, No. C04-0102RSL, 2006 WL 3249193, at *1 (W.D. Wash. Nov. 8, 2006). *Id*. at 4.

As previously stated, the Court disagrees with Allpak's understanding of what is relevant in this case. First, it is clear to the Court that Mr. Silva's request for "all emails, memos, and other written documents referencing or related to the injury and L&I claim made by Plaintiff Martino Silva as a result of an incident and injury on July 9, 2013," was not "the exact same information" sought by Allpak from Mr. Silva's L&I file. The first discovery request seeks internal company documents that could support Mr. Silva's theory for why he was terminated and is therefore relevant to his claims. The second discovery request seeks, at least in part, medical records of Mr. Silva that cannot support a claim or defense of Allpak given the facts of this case, specifically where Mr. Silva did not have a medical condition necessitating the FMLA leave in question, where Mr. Silva's FMLA leave was granted, and where Allpak has already stated that Mr. Silva's employment was terminated as part of a company-wide reorganization. Allpak fails to cite legal authority directly on point to support their position on relevancy. The Court further agrees with Mr. Silva that the documents in question are

ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL - 10

considered confidential under RCW 51.28.070.  The Court acknowledges Allpak's citation to *Mebust*, which establishes that this confidentiality should not be considered a "privilege" barring discovery, and *Papadopoulos,* which establishes that this statute does not create a rule of evidence barring admission at trial.  These cases do not help Allpak, because even if the records are not privileged, they are not relevant and their confidentiality weighs against Allpak's proportional need to these records under Rule 26(b)(1).  The Court will deny Allpak's Motion as to these records.

The Court finds Mr. Silva has met his burden to oppose the above discovery and will deny both of Allpak's Motions to Compel.  The Court notes that dispositive motions have now been filed by both parties, yet Allpak has failed to mention the necessity for the above information in either its Response to Mr. Silva's Motion for Summary Judgment or its own Motion for Summary Judgment.  *See* Dkts. #57 and #63.  This supports the Court's view that none of the above discovery is relevant to this litigation.

## IV.   CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Defendant Allpak's two Motions to Compel (Dkts. #38 and #39) are DENIED.

DATED this 30th day of March 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL - 11